## IN THE UNITED STATES DISTRICT COURT
## OF MINNESOTA

| | |
|---|---|
| PRESTON BROADWAY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br><br>KIA AMERICA, INC., HYUNDAI MOTOR AMERICA, and HYUNDAI KIA AMERICA TECHNICAL CENTER, INC.<br><br>Defendants. | Case No. _____<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

Comes now Plaintiff, individually and on behalf of all other persons similarly situated, for his complaint for damages against Defendants Kia America Inc., Hyundai Motor America, and Hyundai Kia America Technical Center, Inc. (collectively, "Defendants").

## NATURE OF ACTION

1.     This is a class action claim arising from a defect in the Defendants' vehicle which make the vehicles easy to steal, unsafe, and worth less than they should be if they did not have the defect.

2.     Defendants did not disclose this defect, which is a material fact, and a fact that a reasonable person would rely on when purchasing a vehicle.

3.     During the relevant class period, defendants sold these Defective Vehicles (as defined below) at multiple locations throughout the state of Minnesota and the United States.

4.     During the relevant class period, Defendants manufactured, designed, and put into the stream of commerce the Defective Vehicles.

5.      Defendants did so without disclosing the fact that these vehicles had a defect which made them easy to steal, unsafe, and worth less than they should be if they did not have the defect.

6.      Even now, Defendants admit there is a theft problem with these vehicles but are unwilling or unable to fix them, compensate consumers, or otherwise take actions to solve the problems their Defective Vehicles are causing.

## PARTIES

7.      Plaintiff Preston Broadway is a resident and citizen of the state of Minnesota.

8.      Plaintiff brings this action on his own behalf and as a representative of a class of persons who purchased and/or own a Defective Vehicle that was manufactured, produced, distributed, and/or sold by Defendants.

9.      This matter arises out of negligent acts, errors, and omissions committed by the Defendants against Plaintiff causing Plaintiff and the putative class to suffer damages. Plaintiff brings this action on his own behalf and as representative of a class of similarly situated persons to recover damages for violations of the Minnesota Deceptive Trade Practices Act (MUDTPA), Minn. Stat. §325D.43 *et. seq.,* the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 *et. seq.,* among other claims, for economic and injunctive relief against Defendants which manufactured, designed, tested, distributed, promoted, and sold the Defective Vehicles.

10.      At the time the Defective Vehicle was purchased, Plaintiff was unaware that the vehicle lacked an engine immobilizer, was defective, and that it was not fit for the ordinary purpose for which it was used in that it was easy to steal, unsafe, and worth less than it should be if they did not have the defect.

11.      Plaintiff purchased a 2022 Kia Forte on August 7, 2021, in Garden City, KS, for personal, family or household purposes.

12.      Plaintiff's vehicle was stolen July 20, 2022, from 8130 E. Point Douglas Rd. S., Cottage Grove, MN 55016.

13.     When Plaintiff's vehicle was recovered, it was substantially damaged, resulting in hundreds of dollars of out-of-pocket costs for repairs and modifications to prevent future thefts.

14.     Plaintiff, on behalf of himself and the putative class, seeks a refund for monies paid because of their purchase of the Defective Vehicles, compensation for other losses incurred because of the defect, and further seeks an injunctive relief, enjoining Defendants from selling the Defective Vehicles, and requiring Defendants to repair the defect.

15.     Defendant Kia America, Inc., is a California corporation that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606. Defendant Kia America, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

16.     Defendant, Hyundai Motor America, is a California corporation that maintains its principal place of business at 10550 Talbert Avenue, Fountain Valley, California, 92708. Defendant Hyundai Motor America is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

17.     Defendant Hyundai Kia America Technical Center, Inc., is a Michigan corporation that maintains its principal place of business at 6800 Geddes Road, Superior Township, Michigan, 48198. Defendant Hyundai Kia America Technical Center, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiff brings this action on behalf of a class which numbers in the thousands, (2) Plaintiff (a resident of Minnesota) and Defendants (headquartered in California and Michigan) are citizens of different states, and (3) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d). Plaintiff brings a putative class, as explained more fully below, on behalf of a nationwide and a Minnesota class of individuals who suffered the harms set for the in this complaint. On information and belief, Defendants have sold thousands of Defective Vehicles throughout Minnesota, totaling millions of dollars in sales.

19.     This Court has personal jurisdiction over Defendants because Defendants transact business within the State of Minnesota and committed one or more of the underlying acts within the state of Minnesota.

20.     Defendants transacted business and/or committed the underlying actions within the State of Minnesota. Defendants distribute, and/or sell dangerous and/or defective vehicles in Minnesota. Defendants placed the Defective Vehicles into the stream of commerce, sold and/or supplied said products for use, and/or transacted business and committed the underlying acts giving rise to Plaintiff's claims in Minnesota.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events that gave rise to the claims in this case occurred in this District in that the theft of the Defective Vehicle took place in Minnesota.

22.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendants have caused harm to Class Members residing in this district, and/or because the Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

23.     The Defective Vehicles which are the subject of this suit are manufactured, designed, produced, distributed, and sold by Defendants. The Defective Vehicle are easy to steal, unsafe, and worth less than they would be if they did not have the Defect.

24.     Defendants manufacture, design, produce, distribute, and sell the "Defective Vehicles," which are hereby defined as: "all Kia models from 2011-2021 that lack an engine immobilizer." All these vehicles share the same "Defect" — a lack of an engine immobilizer — and therefore suffer a common injury.

25.     Defendants' advertising, labeling, and other marketing concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff, that these vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be if they were not defective.

26.     The Defective Vehicles are so easily stolen due to their failure to comply with the Federal Motor Vehicle Safety Standard ("FMVSS") 114. FMVSS 114, S.5.1.1 requires:

Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:

> a.  The normal activation of vehicle's engine or motor: and
>
> b.  Either steering, or forward self-mobility, of the vehicle, or both.

27.     The Defective Vehicles do not comply with the FMVSS in that whenever the key is removed from the starting system, neither steering nor forward self-mobility is prevented. Failure to immobilize a Defective Vehicle upon removal or absence of its key is a major contributor to the Defective Vehicles' rate of theft.

28.     A vehicle prone to theft cannot provide reliable transportation.

29.     A vehicle prone to theft is not a safe vehicle.

30.     A vehicle that can be prone to theft is not a vehicle that can be depended on to provide reliable transportation.

31.     A vehicle that is prone to theft is not a safe vehicle.

32.     The vehicles are defective because, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that prevents engine ignition without a key.

33.     Anyone can steal a Defective Vehicle by stripping the plastic cover off the ignition column, exposing the vulnerable key cylinder and electronics, and using a USB drive, a knife, or similar tool to turn the ignition and start the vehicle without a key or code.

34.     A YouTube video with over 3.7 million views, posted on May 31, 2022 features a demonstration of how to steal and start a Defective Vehicle. *See* Tommy G, *Kia Boys Documentary (A Story of Teenage Car Theft*, YOUTUBE (May 31, 2022), https://www.youtube.com/watch?v=fbTrLyqL_nw.

35.     A subsequent TikTok challenge video with over 30 million views, posted on July 12, 2022, also features a demonstration of how to steal and start a Defective Vehicle. *See Kia Boyz,* https://www.tiktok.com/discover/KIA-BOYZ%F0%9F%91%BF

36.     Once an individual steals a Defective Vehicle, they can freely operate the vehicle, including the vehicle's steering and forward self-mobility, due to the lack of an engine immobilizer.

37.     Additionally, on information and belief, some of the Defective Vehicles' windows are not adequately connected to the security system; this allows a thief to break open the window without the alarm being triggered.

38.     Defendants knew, as is evident in complaints filed with the National Highway Traffic Safety Administration ("NHTSA"), their vehicles were defective in this manner but failed and refused to disclose these defects to customers, despite having the capability and means to do so.

39.     For example, NHTSA complaint 11471343, dated June 28, 2022, states: "My 2017 Kia Forte is a[*sic*] easy target for the 'Kia Boys' here in Columbus Ohio. My car was a victim of theft where my passenger glass was shattered and my steering column was taken apart and my ignition was jammed with a screwdriver. Kia has made this car susceptible to theft and has

nothing to do about it. I want relief from this hazard." *See*

https://www.nhtsa.gov/vehicle/2017/KIA/FORTE/4%252520DR/FWD#complaints

40. Defendants had the capability and means to add an engine immobilizer or similar device, yet they failed to do so.

41. Defendants also knew just how dangerous it was to not have an engine immobilizer.

42. Beginning in 2009, Kia sought to add as standard equipment an immobilizer system to its Amanti line of vehicles. Kia told the federal government that this device was similar to other devices which reduce theft by 58 to 80 percent. *See,* Federal Register, Vol. 75, No. 6, page 1448, January 11, 2010.

43. Likewise, beginning in 2007, Hyundai sought to add, as standard equipment, an immobilizer system to its Azera line of vehicles. It told the federal government that this device was similar to other devices which reduce theft to 58 to 80 percent. *See,* Federal Register, Vol. 72, No. 138, page 39662, July 19, 2007.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of himself and the following c lass of similarly situated persons:

   a. A "Nationwide Class" based on claims of unjust enrichment, violations of the Magnuson Moss Warranty Act, negligence, design defect, and/or breach of express and/or implied warranty consisting of all customers who own any of the Defective vehicles in the United States, and/or purchased any of the Defective Vehicles in the United States within the past five years; or

   b. A "Minnesota Class" based on claims brought under the MUDTPA, unjust enrichment, and/or breach of express, and/or implied warranty, negligence, and design defect, consisting of all customers who purchased and/or own any of the Defective Vehicles in Minnesota for personal, family, business, or household purposes with the applicable statute of limitations period; or

45.     Excluded from each Class is Defendants, including any parent, subsidiary, affiliate, or controlled person of Defendants; Defendants' officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families. Also excluded from each Class are those claiming they have suffered a personal injury as a result of the Defective Vehicles, as well as residents of Wisconsin.

46.     Each of the proposed Nationwide Class or Minnesota Class meets all requirements for class certification. Each Class satisfies the numerosity standards. Each Class is believed to number in the thousands of persons. As a result, joinder of all Class Members in a single action is impracticable. All Class Members may be informed of the pendency of the Class Action by, among other methods, direct, published and/or broadcast notice.

47.     There are questions of fact and law common to the Nationwide Class or Minnesota Class which predominate over any questions affecting only individual members. The question of law and fact common to each Class arising from Defendants' actions include, without limitation, the following:

      a. Whether Defendants designed and manufactured the Defective Vehicles without engine immobilizers;

      b. Whether the failure of the vehicles to, among other design failures, have engine immobilizers makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers;

      c. Whether the absence of an engine immobilizer, among other design failures, is a material fact in the purchasing of a vehicle;

      d. Whether, in marketing and selling the Defective Vehicles, Defendants failed to disclose the lack of an engine immobilizer and other design failures;

      e. Whether Defendants failed to disclose and/or concealed the material fact that the Defective Vehicles, among other things, did not have an engine immobilizer.

f.   Whether Defendants failed to warn adequately of the dangers of vehicles that do not contain engine immobilizers, among other things;

g.   Whether Defendants knew or should have known that the Defective Vehicles did not have engine immobilizers, among other things;

h.   Whether Defendants knew or should have known that the failure of the vehicles to have engine immobilizers, among other things, makes them easy to steal, unsafe, and worth less that they would be if they had engine immobilizers;

i.   Whether Defendants continued to manufacture, market, distribute, and sell the Defective Vehicles notwithstanding its knowledge of the defects, dangerous nature and risks of harm;

j.   Whether Defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of the Defective Vehicles from the consuming public;

k.   Whether the Defective Vehicles are fit for their ordinary purpose;

l.   Whether the Defective Vehicles proved reliable transportation;

m.   Whether the Defective Vehicles are safe;

n.   Whether the Defective Vehicles contain a design defect;

o.   Whether Defendants' conduct violated the MEDTPA;

p.   Whether Defendants' conduct violated the Magnuson Moss Warranty Act;

q.   Whether Plaintiff and the Classes were harmed by Defendants' conduct; and/or

r.   The degree to which Plaintiff and the Classes were harmed by Defendants' conduct.

48.   The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

49.     A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of Nationwide Class Members or Minnesota Class Members to protect their interest.

50.     The claims of Plaintiff's are typical of the claims of members of the Nationwide Class and the Minnesota Class. Upon information and belief, the Defective Vehicles all share the same defects. Upon information and belief, the labels, manuals, advertising, and disclosures concerning the Defective Vehicles all fail to reasonably disclose the presence of these defects.

51.     Plaintiff is an adequate representative of the Nationwide Class and the Minnesota Class because he is a member of both Classes and his interest do not conflict with the interests of the members of the Nationwide Class or Minnesota Class he seeks to represent. The interests of the members of the Nationwide Class or Minnesota Class will be fairly and adequately protected by the Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex class action litigation.

52.     Plaintiff seeks a refund of some, or all monies paid as a result of the purchase of the Defective Vehicle that occurred following Defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of the Defective Vehicle.

53.     Plaintiff also seeks compensation for damages incurred beyond the reduced value of their vehicles, including but not limited to the purchase price of a "Club" or other similar devices to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

54.     Plaintiff specifically excludes from this class action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the Defective Vehicle based on the defects.

55.     Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of the Nationwide Class or Minnesota Class who suffered harm to bring a separate action given the damages at issue compared to the costs of litigating each individual claim. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Nationwide Class Members or Minnesota Class Members.

56.     Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness, and equity over other available methods of adjudication.

57.     Class action treatment is appropriate in this case because Defendants acted, or refused to act, in a manner that was generally applicable to – and often identical to – each member of the Nationwide Class or Minnesota Class. Defendants provided vehicles with the same defect to, and withheld the same information from, all members of the Nationwide Class or Minnesota Class and sold vehicles with the same defects.

58.     Notice can be provided to Class Members by using techniques and forms of notice similar to those customarily used in other defective-product cases and complex class actions.

## CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF THE MINNESOTA UNIFORM DECPTIVE TRADE PRACTICES ACT (MUDTPA) § 325D.43

59.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

60.     The MUDTPA, provides, in part, that a person engages in a deceptive trade practice when, in the course of business, the person represents that goods have characteristics or benefits that they do not have. Minn. Stat. § 325D.44 Subd. 1(5).

61.     The MUDTPA, provides, in part, that a person engages in a deceptive trade practice when, in the course of business, the person engages in conduct that creates a likelihood of confusion or misunderstanding. Minn. Stat. § 325D.44 Subd. 1(13).

62.     The acts and practices engaged in by Defendants, and described herein, constitute deceptive business practices in violation of the MUDTPA.

63.     Defendants engaged in unlawful practices including deceptions, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts, specifically, the failure to warn or disclose that the vehicles were defective, including that they lacked an engine immobilizer, as well as the representation the defective Vehicles meet all federal safety standards – in connection with the sale, distribution or advertisement of the Defective Vehicle in violation of the MUDTPA.

64.     Defendants engaged in unlawful practices including conduct that created the likelihood of confusion or misunderstanding as to whether the Defective Vehicles were equipped with an engine immobilizer.

65.     Under Minn. Stat. § 325D.44 Subd. 2, in order to prevail under the MUDTPA, "a complainant need not prove . . . actual confusion or misunderstanding."

66.     While Plaintiff purchased the Defective Vehicle in another state. Plaintiff suffered the consequences of the Defect as a resident in Minnesota when his vehicle was stolen on July 20, 2022. The recent decision in *Ford Motor Co. v. Montana Eighth Judicial District Court* 2021 WL 1132505 (U.S. March 25, 2020), confers standing on Plaintiff to assert claims based on a product that was falsely represented, as stated above, in violation of the MUDTPA, and as a result, Plaintiff suffered economic damages in that the vehicles purchased were worth less than the vehicle they thought they had purchased, had Defendants not omitted and/or misrepresented material facts.

Plaintiffs, and other reasonable consumers, had no reasonable information to suggest that the Defective Vehicles lacked an engine immobilizer, failed to meet FMVSS 114, or was otherwise easy to steal and unsafe.

67.     Plaintiff and the Minnesota Class Members acted as reasonable consumers would in light of all circumstances.

68.     Defendants' actions and omissions would cause a reasonable person to be confused or have a misunderstanding as to whether the Defective Vehicles were equipped with engine immobilizers, complied with FMVSS 114, and were easy to steal.

69.     As a direct result of Defendants' actions and omission, Plaintiff and the Minnesota Class Members suffered economic damages that can be calculated with a reasonable degree of certainty, including a refund of money paid as a result of their purchase.

70.     These damages are not limited to only the difference in value between a Defect Vehicle and a similar vehicle that is not defective and loss of value of the vehicle due to damage and theft. Other damages include, but are not limited to, the purchase price of a "Club" or other similar devices to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

71.     Plaintiff and the Minnesota Class also seek injunctive relief, requiring Defendants to repair the Defective Vehicles.

### COUNT II – VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MPCFA) – MINN. STAT. § 325F.68 *ET SEQ.*

72.     Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

73.     Plaintiff, Class Plaintiffs and Defendants are all "person[s]" for purposes of the MPCFA. Minn. Stat. § 325F.68 Subd. 3.

74.     The MPCFA provides in pertinent part:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.
> Minn. Stat. § 325F.69.

75.     Defendants sold the Defective Vehicles in Minnesota and throughout the United States.

76.     The Defective Vehicles meet the definition of "merchandise" under the MPCFA.

Minn. Stat. § 325.68

77.     Defendants' sale of the Defective Vehicles meets the definition of "sale" under the

MPCFA. Minn. Stat. § 325F.68

78.     Defendants engaged in misrepresentation, deception, or deceptive practices in the sale of

the Defective Vehicles in that defendants failed to warn or disclose that the vehicles were defective,

including that they lacked an engine immobilizer, as well as by representing that the Defective

Vehicles meet all federal safety standards including FMVSS 114.

79.     Pursuant to Minn. Stat. § 325F.70 and *Ford Motor Co. v. Montana Eighth Jud. Dist.

Ct.,*141 S, Ct, 1017 (2021). Plaintiff is entitled to seek an order enjoining future conduct by

defendants, damages for the difference in value between a Defective Vehicle and a similar vehicle

that is not defective and loss of value of the vehicle due to damage and theft. Other damages

include, but are not limited to, the purchase price of a "Club" or other similar devices to prevent

theft, the increase in insurance premiums they are or may face due to the design defect, and the

stigma associated with the Defective Vehicle.

## <u>COUNT III – VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT</u>

80.     Plaintiff re-alleges and incorporate herein all other allegations in this Complaint.

81.     Plaintiff brings this Count against Defendants on behalf of members of the Nationwide

 Consumer Class.

14

82.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

83.     The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

84.     Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

85.     Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

86.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied or written warranty.

87.     Defendant provided Plaintiff and the other Class Members with an implied warranty of merchantability in connection with the purchase of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S. C. § 2301(7).

88.     As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for the ordinary purpose of passenger motor vehicles, were not far easier to steal than other vehicles, and were not unsafe and/or unreliable due to the ease at which they can be stolen.

89.     Defendants breached this implied warranty and are therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1) because, without limitation, the Defective Vehicles share common design defects, including that they lack engine immobilizers.

90.     These defects render the Defective Vehicles deficient, in that they do not provide safe and reliable transportation, as they are tremendously easy to steal.

91.     A vehicle prone to theft cannot provide reliable transportation.

92.     A vehicle that is prone to theft cannot be relied on for transportation.

93.     A vehicle prone to theft is not a safe vehicle.

94.     A vehicle that is prone to theft is an unsafe vehicle.

95.     Defendants provided Plaintiff and the other Class Members with an express written warranty in connection with the purchase or lease of their vehicles, as described further below, that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

96.     Defendants made written affirmations of fact that the Defective Vehicles would be free of defects that would prevent ordinary use.

97.     Upon information and belief, Defendants affixed labeling and other written affirmations making specific, performance-related representations related to the nature of the Defective Vehicles, including expressly warranting that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

98.     Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class Members Defective Vehicles that are not free of material defects; they contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

99.     Any efforts to limit the express and implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void. Any limitations on the express and implied warranties are procedurally unconscionable. Defendants purposefully misrepresented the Defective Vehicles to consumers.

100.    Additionally, there was unequal bargaining power between Defendants and Plaintiff and the Class Members.

101.    Any limitations on the express and implied warranties are substantively unconscionable.

102.    Defendants knew that no engine immobilizers were installed on the Defective Vehicles, among other design failures, and that they were failing to disclose this material fact, thereby misrepresenting the safety, ease of theft, and value of the Defective Vehicles.

103.    Defendants failed to disclose the defects to Plaintiff and the other Class Members even though Defendants were aware of the defects.

104.    Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Defendants and their dealers and agents.

105.    Specifically, Plaintiff and each of the other Class Members are intended third-party beneficiaries of the implied and written warranties.

106.    The dealers and agents were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided for the Defective Vehicles: the warranty agreements were designed for and intended to benefit consumers.

107.    Finally, privity is also not required because the Defective Vehicles are unsafe and hazardous instrumentalities due to, among other matters, the lack of engine immobilizers.

108.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

109.     Furthermore, affording Defendants an opportunity to cure their breach of warranties would be unnecessary and futile.

110.     Defendants are aware of the problems, and even claim they have attempted to "fix" their 2022 vehicles to eliminate the safety defects described herein by including an immobilizer on all models and trim packages but are refusing to do anything about the pre-2022 Defective Vehicles.

111.     At the time of sale or lease of each Defective Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.

112.     Under the circumstances, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiffs resort to an informal dispute resolution procedure and afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

113.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.

114.     The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit.

115.     Plaintiff, individually and on behalf of the other Class Members, seeks all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.

116.     In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by

Plaintiffs and the other Class Members in connection with the commencement and prosecution of this action.

117.    Additionally, Plaintiff and each of the other Class Members are entitled to equitable relief under 15 U.S.C. § 2310(d)(1), including Defendants being required to fix these vehicles.

## COUNT IV – UNJUST ENRICHMENT

118.    Plaintiff re-alleges and incorporate herein all other allegations in this Complaint.

119.    Plaintiff and the Nationwide Class and/or Minnesota Class Members purchased vehicles that they would not have purchased had they known that the vehicles, among other defects, contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers.

120.    The purchase of the Defective Vehicles conferred a benefit upon Defendants. Defendants manufactured, distributed, and sold the Defective Vehicles at a higher profit due to the lack of the engine immobilizer and other anti-theft devices.

121.    Defendants appreciated and knowingly accepted the benefit of the sale of the Defective Vehicles to Plaintiffs and the Class.

122.    The Defendants were therefore unjustly enriched at the expense of and to the detriment of the Plaintiffs and the Class.

123.    Plaintiff and the Nationwide Class and/or Minnesota Class are therefore entitled to restitution from the Defendants and seek an order requiring the Defendants to disgorge all profits, benefits, and other compensation the Defendants obtained from the sale of these products.

## COUNT V – BREACH OF IMPLIED WARRANTY

124.    Plaintiff re-alleges and incorporate herein all other allegations in this Complaint.

125.    Defendants are merchants with respect to the sale of the Defective Vehicles purchased by Plaintiffs.

126.    Defendants, by selling the Defective Vehicles, impliedly warranted that the vehicles were merchantable with respect to goods of that kind.

127.    This warranty was assigned to Plaintiff upon purchasing the vehicle.

128.    The Defective Vehicles sold by Defendants and purchased by Plaintiff did not conform with the implied promises made with respect to the labels and material that accompanied the product. Specifically, by failing to reasonably disclose the vehicles did not have engine immobilizers, Defendants implied that the Defective Vehicles were not far easier to steal than other vehicles, were thereby safe, and were worth as much as vehicles that possessed engine immobilizers.

129.    As a result of having no engine immobilizer, among other defects, the Defective Vehicles were not merchantable, and Defendants breached their implied warranty of merchantability with respect to the Defective Vehicles.

130.    Had Plaintiffs known that the Defective Vehicles lacked an engine immobilizer, among other defects, making them far easier to steal, and were thereby unsafe and worth less than their sales price, she would not have purchased it or would have paid significantly less for the vehicle. As a result of Defendants' breach of implied warranty, Plaintiff, and the Nationwide Class and/or Minnesota Class Members have suffered economic injuries.

131.    Defendants are being provided notice by receipt of demand made by Plaintiff on behalf of themselves and the putative class through the filing of this Complaint. In addition, Defendants have actual notice of the defect.

## COUNT VI – BREACH OF EXPRESS WARRANTY

132.    Plaintiff re-alleges and incorporate herein all other allegations in this Complaint.

133.    Defendants are and at all relevant times were merchants with respect to motor vehicles under U.C.C. § 2-313.

134.    Upon information and belief, in the course of selling its vehicles, Defendants expressly warranted in writing that the Defective Vehicles were high quality, properly designed, in conformance with applicable federal standards, and at a minimum, would work properly.

135.    Defendants breached their express warranties for the Defective Vehicles by, among other things, selling or leasing to Class Members' Defective Vehicles that are not free of material defects; they contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers, which they should.

136.    Due to the Defendants' breach of warranties as set forth herein, Plaintiff and the Class assert as an additional and/or alternative remedy, as set forth in U.C.C. §§ 2-608 and 2-711, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the Class of the purchase price of all vehicles currently owned and for such other incidental and consequential damages as allowed under U.C.C. §§ 2-608 and 2-711.

137.    Defendants were provided notice of these issues by complaints filed against them, including the instant complaint, and, upon information and belief, by numerous communications sent by customers before or within a reasonable amount of time after the allegations of vehicle defects became public.

138.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT VII – NEGLIGENCE

139.    Plaintiff re-alleges and incorporate herein all other allegations in this Complaint.

140.    Defendants designed, manufactured, distributed, tested, sold, applied, used and/or supplied the Defective Vehicles at issue.

141.    Defendants held themselves out as a corporation capable of reasonably and prudently developing, manufacturing, marketing, supplying, testing, distributing, applying, using, supplying, and selling the Defective Vehicles at issue and therefore had the duty to have and exercise the knowledge of an expert on such product.

142.    Defendants knew or should have known that the Defective Vehicles contained defects including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key.

143.    Defendants knew or should have known that the Defective Vehicles are incredibly easy to steal.

144.    As designers, manufacturers, processors, packagers, distributors, marketers, sellers, users, appliers and suppliers of the Defective Vehicles, Defendants had a duty to exercise due care and the ordinary, reasonable and technical skill and competence that is required of designers, manufacturers, processors, packagers, distributors, marketers, sellers, suppliers, and others in a similar situation, including, without limitation, the duty to test its vehicles; the duty to acquire and maintain the knowledge of an expert; the duty to design, manufacture, process, distribute, market, sell, and/or supply its vehicles free from defects and/or latent defects; the duty to adequately warn of vehicle defects and/or hazards, which duty continued even after the sale of said vehicles; and

the duty to market, advertise, sell and supply vehicles with adequate information and warnings about the unacceptable risk of theft their design failures create.

145.    Defendants failed to use due care under the circumstances and thereby breached its duties as set forth above and was careless and negligent in the performance of its said duties to Plaintiff and the Nationwide Class and/or Minnesota Class Members.

146.    Plaintiff used one of Defendants' Defective Vehicles in a manner ordinarily anticipated by Defendant.

147.    As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiff and the Nationwide Class and/or Minnesota Class Members have suffered economic injuries.

148.    These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective. Other damages include, but not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums Plaintiffs and Class Members are facing or may face due to the design defect, and the stigma associated with the Defective Vehicles.

149.    At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and/or safety of others.

150.    Defendants specifically placed profits ahead of the health, rights, and safety of others by intentionally designing the vehicles to be defective and by concealing material facts about the Defective Vehicles.

151.    Defendants' conduct was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Nationwide Class and/or Minnesota Class Members.

152.    As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have been damaged in an amount to be determined at trial.

## COUNT VIII – STRICT LIABILITY, DESIGN DEFECT

153.    Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

154.    Defendants designed, manufactured, and/or supplied the Defective Vehicles in question within the ordinary course of its business.

155.    Plaintiff purchased and owned a Defective Vehicle.

156.    The Defective Vehicles contain a design defect including that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key. As a result, the Defective Vehicles are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers.

157.    Defendant knew or should have known of the dangerous and defective nature of the Defective Vehicles at the time of their design, manufacture, sale, testing, transportation, distribution, supply, and use.

158.    Notwithstanding, Defendants failed to take safety precautions to prevent economic injury to Plaintiffs and failed to warn and/or instruct Plaintiff and others of the defective and unreasonably dangerous nature of said vehicles.

159.    Defendant's defective and unreasonably dangerous vehicles directly and proximately caused economic injuries to Plaintiffs and the Nationwide Class and/or Minnesota Class Members.

160.    Plaintiffs drives the vehicle and then parks it and leaves it unattended, which is a manner of use reasonably anticipated by Defendants.

161.    As a result of the Defective Vehicles' defect, which make them incredibly easy to steal, they are unreasonably dangerous and defective when put to the use anticipated by Defendants.

162.    As a direct and proximate result of the dangerous and defective condition of Defendants' vehicles and Defendants' failure to warn of the dangers thereof, Plaintiff and the Nationwide Class and/or Minnesota Class Members have suffered economic injuries.

163.    These injuries are not limited to only the difference in value between a Defective Vehicle and a similar vehicle without that is not defective. Other damages include, but are not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums Plaintiff and Class member are facing or may face due to the design defect, and the stigma associated with the Defective Vehicles.

164.    At the time of Defendants' design, manufacture, processing, distribution, marketing, selling, supplying and/or use of the Defective Vehicles at issue, Defendants knew of the dangerous condition of said products and supplied them with deliberate and/or intentional disregard for not making any warning, instruction, or other precaution to prevent injuries or damages and thereby showed complete indifference to and/or conscious disregard for the rights and/or safety of others.

165.    Defendants specifically placed profits ahead of the health, rights, and safety of others by intentionally designing the vehicles to be defective and by concealing material facts about the Defective Vehicles' safety features.

166.    Defendants' conduct was willful, wanton, and/or in reckless disregard for the rights of Plaintiffs and the Nationwide Class and/or Minnesota Sub-Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, request relief and judgment against Defendants as follows:

a. An order certifying the Class, appointing Plaintiff as representative of the Nationwide Class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Nationwide Class;

b. Alternatively, an order certifying the Minnesota Class, appointing Plaintiff as representative of the Minnesota Class, appointing Plaintiffs' counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Minnesota Class;

c. Judgment against the Defendants for the causes of action alleged against it;

d. Damages in an amount to be proven at trial;

e. Injunctive relief, enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the vehicles;

f. An award of reasonable attorneys' fees and costs, including experts' fees;

g. For such other relief in law or equity as the Court deems just and proper.

## DESIGNATION AND DEMAND FOR JURY TRIAL

Plaintiffs hereby demands a trial by jury.

Dated October 11, 2022.

Respectfully submitted,

GUSTAFSON GLUEK PLLC

By: /s/David A. Goodwin
Daniel E. Gustafson (MN Lic. #202241)
David A. Goodwin (MN Lic. #0386715)
Kaitlyn L. Dennis (MN Lic. #0397433)

26

GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
kdennis@gustasongluek.com

THRONDSET MICHENFELDER LLC
Patrick W. Michenfelder (#024207X)
Chad A. Throndset (#0261191)
Jason D. Gustafson (#0403297)
Cornerstone Building
One Central Avenue West, Suite 101
St. Michael, MN 55376
Tel: (763) 515-6110
Fax: (763) 226-2515
pat@throndsetlaw.com
chad@throndsetlaw.com
jason@throndsetlaw.com

***Attorneys for Plaintiff***